IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| SAMANTHA NELSON, for herself and minor child L.N., <br><br> Plaintiffs, <br><br> v. <br><br> NAZARETH INDEPENDENT SCHOOL DISTRICT, *et al.*, <br><br> Defendants. | 2:24-CV-177-Z |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion for a Temporary Restraining Order ("Motion") (ECF No. 7), filed August 19, 2024. Having reviewed the Motion, Plaintiffs' complaint, and relevant law, the Court **DENIES** the Motion.

**SUMMARY**

Samantha Nelson, on behalf of herself and minor daughter, L.N., ("Plaintiffs") allege Nazareth Independent School District ("NISD") and its officials (combined, "Defendants") illegally retained L.N. in fourth grade after she submitted blank answers to her State of Texas Assessments of Academic Readiness ("STAAR") test. Defendants' Retention and Promotion Policy ("Policy") requires students achieve at least "Approaches Grade Level" on a state assessment like the STAAR test before advancing to the next grade. ECF No. 1 at 7. Plaintiffs allege Defendants subsequently amended the Policy to require state assessment testing to retaliate against students who opt out of the STAAR test. *Id.* at 5–6. Plaintiffs request a temporary restraining order against Defendants based on alleged violations of the Equal Protection Clause, procedural due process, substantive due process, and the First Amendment. *Id.* at 15–28.

**BACKGROUND**

L.N.'s parents object to the STAAR test for pedagogic reasons. ECF No. 1 at 4, 10–13. Thus, they directed L.N. to fail the STAAR assessment at the end of third grade. *Id.* at 4; ECF No. 12 at 6. She nevertheless advanced to fourth grade because the old NISD policy used STAAR testing as a *factor* but did not *require* a particular test result. ECF No. 1 at 4–5.

The following year, at the direction of her parents, L.N. once again submitted "blank" answers to the STAAR test. *Id.* at 6; ECF No. 12 at 6–7. But this time, the new NISD Policy required a Retention Committee meet and decide whether to promote L.N. despite her STAAR failure. ECF No. 1 at 6. The principal, L.N.'s parents, and L.N.'s teacher comprised the Retention Committee. *Id.* at 8. The Retention Committee required unanimity to promote a student who failed the STAAR test. *Id.* at 9. The principal voted against promotion and all others voted in favor. *Id.* Consequently, L.N. remained in fourth grade because of her failed STAAR result. Since then, L.N.'s parents have not permitted L.N. to attend school. ECF No. 13-1 at 1–2; ECF No. 12 at 18.

Plaintiffs claim Defendants enacted the Policy in surmised retaliation for exercising their First Amendment rights and that it violates their Fourteenth Amendment rights. ECF No. 1 at 17–24. They bring this action under 42 U.S.C. § 1983 and seek a Temporary Restraining Order mandating L.N. advance to fifth grade, among other requested relief. *Id.* at 24–26.

**LEGAL STANDARD**

To obtain a temporary restraining order, Plaintiffs must show (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the nonmovant if the injunction is granted; and (4) the injunction will not disserve the public interest. *Robinson v. Ardoin*, 86 F.4th 574, 587 (5th Cir. 2023); *Air Prod. & Chemicals, Inc. v. Gen. Servs. Admin.*, No. 2:23-CV-147,

2023 WL 7272115, at *2 (N.D. Tex. Nov. 2, 2023); *see also Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (explaining that courts apply identical standards for preliminary injunctions and temporary restraining orders). Failure to demonstrate any one factor is sufficient to deny injunctive relief. *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

The first two factors are more critical, and the latter two merge when the government is an opposing party. *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020); *Nken v. Holder*, 556 U.S. 418, 435 (2009). But no factor has a "fixed quantitative value." *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023). On the contrary, "a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id.* In sum, the "decision to grant or deny [relief] lies within the sound discretion of the trial court . . . ." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).

**ANALYSIS**

I. **Plaintiffs fail to show a substantial likelihood of success on the merits.**

Plaintiffs fail to demonstrate a substantial likelihood of success on the merits on each of the violations alleged: Equal Protection Clause, procedural due process, substantive due process, and the First Amendment's Free Speech Clause. *Id.* at 15–28.

A. *Equal Protection*

Plaintiffs allege Defendants violated their equal protection rights. Specifically, they argue Defendants promulgated the Policy to discriminate against Plaintiffs by only modifying it after L.N. left blank her third-to-fourth grade STAAR test. This promulgation was, Plaintiffs allege, "a discriminatory practice against individuals who refuse to do their best on the STAAR." ECF No. 1 at 17. At the same time, Defendants allegedly advance other students who were not as academically prepared vis-à-vis non-STAAR metrics.

But Plaintiffs' equal protection claims fail because they "did not sufficiently allege [they have] been treated differently from others similarly situated." *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018). Under Equal Protection jurisprudence, public education is not a fundamental right triggering strict scrutiny review. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35–40 (1973) (holding the strict scrutiny test inappropriate for an equal protection claim based in a right to education); *Faddoul v. I.N.S.*, 37 F.3d 185, 189 (5th Cir. 1994) ("Education, though undeniably important, is a matter of governmental policy rather than a fundamental right.").

Therefore, an equal protection claim of this type requires Plaintiffs "show that (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiffs claim Defendants enacted the Policy to retaliate against them for prior STAAR refusals. Yet Plaintiffs do not argue that the Policy is applied differently to different students without rational basis. In fact, Plaintiffs attached evidence that Defendants sought to discourage *others* from intentionally failing the STAAR test and enacted the Policy to deter *other* STAAR opt outs. ECF No. 1 at 4–5. Defendants maintain the Policy applies to all students who fail STAAR. ECF No. 12 at 14. Plaintiffs suggest that Defendants "promote other students who had not passed the STAAR," but offer no additional argument or evidence. *Id.* at 17; *see Rountree*, 892 F.3d at 685 ("An allegation that others are treated differently, without more, is merely a legal conclusion that we are not required to credit."). Moreover, Plaintiffs fail to explain whether Defendants promoted these other students before or after the new Policy.

4

Further, even if L.N. is treated differently, Defendants' Policy passes rational-basis review. Because Plaintiffs are not alleging discrimination against a suspect class, the Court "consider[s] whether 'the classification rationally further[s] a legitimate state interest.'" *Hines v. Quillivan*, 982 F.3d 266, 273 (5th Cir. 2020) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)) (second alteration in original). Rational basis review only requires the Court to find "a conceivable rational basis for the official action." *Reid v. Rolling Fork Pub. Util. Dist.*, 854 F.2d 751, 754 (5th Cir. 1988) (emphasis omitted). The Policy rationally advances legitimate state interests: (1) the evaluation of students for academic preparedness for grade promotion and (2) the deterrence of "opt outs" who oppose state assessments for pedagogical reasons — but not religious or conscience reasons. ECF No. 12 at 14. Plaintiffs' claims on the alleged inefficacy or irrationality of STAAR cannot overcome rational basis review.

B. Procedural Due Process

Plaintiffs doubly fail their procedural due process claim. To succeed on a procedural due process claim, Plaintiffs must establish they held a liberty or property interest in promotion to the next grade. *Board of Regents v. Roth*, 408 U.S. 564 (1972). They argue they retain a property interest in advancing to the next grade and that they should thus receive a fair hearing. ECF No. 1 at 19. But neither is true. Students have no due process "liberty" or "property" interest in promotion to the next grade. *Killion by Ackers v. Burl*, 860 F.2d 306, 306 (8th Cir. 1988); *see also Jeffrey v. Bd. of Trustees of Bells ISD*, 261 F. Supp. 2d 719, 726 (E.D. Tex. 2003) ("[I]t is only when a student is excluded from the entire educational system that due process must be afforded."). "Plaintiffs had no property right in the expectation that substandard scholastic achievement would continue to be accepted as a basis for promotion," even if L.N.'s parents ordered that substandard achievement. *Bester v. Tuscaloosa City Bd. of Educ.*, 722 F.2d 1514, 1516 (11th Cir. 1984).

Even if they did, a hearing is not required if retention is for academic reasons. *Board of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86–89 (1978). If it were, Plaintiffs are not entitled to a full evidentiary hearing but simply notice and an opportunity to be heard. *Goss v. Lopez*, 419 U.S. 565, 579 (1975). Plaintiffs were provided extensive notice of the change and even signed their acknowledgement of the new Policy. ECF No. 12 at 13. Plaintiffs were heard at a retention meeting and had the opportunity to present their views and even vote on L.N.'s retention. ECF No. 1 at 7–9.

### C. Substantive Due Process

For similar reasons, Plaintiffs are not likely to succeed on their substantive due process claim. To prevail, Plaintiffs must show deprivation of a constitutionally protected "property" or "liberty" interest. *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). As explained, promotion to the fifth grade is not a fundamental liberty or property interest. And though being *wholly denied* access to a public education implicates a property interest, L.N.'s parents are withholding her education to the point of truancy. *See Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997); *Goss v. Lopez*, 419 U.S. 565, 576 (1975); ECF No. 13-1 at 1–2. By contrast, Defendants merely refuse to promote L.N. from fourth to fifth grade. ECF No. 12 at 11.

Plaintiffs invoke their parental rights to control the education of their child under substantive due process. *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion); *Meyer v. Nebraska*, 262 U.S. 390, 401 (1923). The Fourteenth Amendment's Due Process Clause protects "the oldest of the fundamental liberty interests" — "the interest of parents in the care, custody, and control of their children." *Troxel*, 530 U.S. at 65. Relevant here, the Supreme Court has affirmed parental control of education in at least two categories: (1) the selection of education *type* and (2) objections to substantive *content* on religious or conscience grounds.

First, the Fourteenth Amendment protects parents who "direct the upbringing and education of children under their control." *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925). This, at heart, means parents have the right "to choose how and in what manner to educate their children" — whether publicly, privately, at home, or otherwise.[1] *Zelman v. Simmons-Harris*, 536 U.S. 639, 680 n.5 (2002) (Thomas, J., concurring) (citing *Pierce*, 268 U.S. at 535).

Second, parents may opt out of objectionable content on religious or conscience grounds when Free Exercise rights are implicated. *See Wisconsin v. Yoder*, 406 U.S. 205, 213–18 (1972); *see also Fulton v. City of Phila.*, 593 U.S .522, 599 (2021) (Alito, J., concurring) (noting these parental rights overpower even *Employment Div. v. Smith*, 494 U.S. 872 (1990)). In addition, these parental rights are also protected under the Texas Constitution and by statute. *See, e.g.*, Tex. Const. art. 1, § 6; Tex. Civ. Prac. & Rem. Code Ann. § 110.003 (West 2024); 42 U.S.C. § 2000bb-1. Combined, the Fourteenth Amendment's Due Process Clause, the First Amendment's Free Exercise Clause, the Texas Constitution and statutes, and federal laws *do indeed* protect parents and children who (1) opt out of public education entirely or (2) opt out of educational content that violates sincerely held religious or conscience-based beliefs.

But Plaintiffs claim neither.

Here, L.N.'s parents opted *into* public education and do not object to STAAR testing on religious or conscience grounds. Instead, Plaintiffs object to the pedagogy and inefficacy of STAAR testing — and perhaps are correct as a matter of education policy. But the substantive due process jurisprudence on "parental rights" cannot stretch this far. *See Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 291 (5th Cir. 2001) (closely analyzing *Troxel*, *Pierce*, and *Yoder*, and

---

[1] Of course, parents may not exercise their parental rights to opt out of education entirely. *See Meyer v. Nebraska*, 262 U.S. 390, 402 (1923) ("The power of the state to compel attendance at *some school* is . . . not questioned.") (emphasis added).

concluding that "parental rights are not *absolute* in the public school context and can be subject to *reasonable* regulation" when upholding a school uniform policy) (emphasis added); *see also Jeffrey*, 261 F. Supp. 2d at 727 ("[T]he fundamental right to direct the education of one's child simply does not carry with it the right to control or direct *every component* of the educational process.") (emphasis added). Plaintiffs might prevail in other cases where their substantive due process "parental rights" sound in religion or conscience. But not in this case, where Plaintiffs' objections are rooted in pedagogical disagreement with Defendants' use of the STAAR test as an (areligious) metric for grade promotion.

### D. First Amendment

Plaintiffs' First Amendment claims fare no better. They allege Defendants enacted the Policy to retaliate for their criticism of the STAAR test and their opt-out speech. ECF No. 1 at 20. To prevail on their First Amendment retaliation claim, Plaintiffs must prove that "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

Plaintiffs were engaged in constitutionally protected speech when they criticized the STAAR test. But the Policy does not proscribe *speaking* against the STAAR test — at the NISD School Board meetings, NISD sporting events, NISD elections, NISD opening meetings, etc. It rather prescribes a testing methodology to ascertain whether a student may advance to the next grade: at least "Approaches Grade Level" on a state assessment like the STAAR test. Unless the *substantive* content of the STAAR test implicates other constitutional, statutory, or related

rights — *e.g.*, compelled speech in violation of the First Amendment,[2] or coercive compulsory religious observance in violation of the Establishment Clause[3] — the Policy does not run afoul of the First Amendment's speech or free exercise protections. Taking the STAAR test alone implicates none of these. Moreover, Plaintiffs' continual speech against STARR, despite the Policy, underscores that the Policy did not chill their speech. Consequently, Plaintiffs' First Amendment claims fail.

## II.     Plaintiffs do not satisfy other TRO factors.

A temporary restraining order may not issue if Plaintiffs do not satisfy all four factors. *See Mayo Found. for Med. Educ. & Rsch. v. BP Am. Prod. Co.*, No. 2:20-cv-34, 2020 WL 759212, at *2 (N.D. Tex. Feb. 14, 2020). Failure to demonstrate a "likelihood of success on the merits" is sufficient to deny the temporary restraining order.

Plaintiffs arguably prevailed in proving a substantial threat of irreparable injury. Though the Court need not decide that second factor because they fail all other factors.

In actions against the government, the third and fourth factors merge for a temporary restraining order. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Granting a temporary restraining order would harm the public interest by validating an opt-out objection unmoored from cognizable constitutional and statutory rights. The Texas Legislature mandates that school districts consider "the student's score on an assessment instrument administered under Education Code § 39.023(a)." Tex. Educ. Code Ann. § 28.021(c) (West 2024). No matter its bane or benefit, the State of Texas approved the STAAR test to implement Education Code § 39.023(a). School districts have the

---

[2] *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) ("In *Hurley*, *Dale*, and *Barnette*, the Court found that governments impermissibly compelled speech in violation of the First Amendment when they tried to force speakers to accept a message with which they disagreed.").

[3] *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 536–37 (2022) ("[T]his Court has long held that government may not, consistent with a historically sensitive understanding of the Establishment Clause, 'make a religious observance compulsory.'") (quoting *Zorach v. Clauson*, 343 U.S. 306, 314 (1952)).

"primary responsibility for implementing" these mandates. Tex. Educ. Code Ann. § 11.002 (West 2024). Defendants chose to adopt the Policy in their discretion to implement these legislative mandates. On balance, the public interest served by this Court's order denying Plaintiffs' temporary restraining order at this phase of the litigation outweighs the alleged harm to Plaintiffs.

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** the Motion.

**SO ORDERED**.

September 6, 2024

                                              MATTHEW J. KACSMARYK
                                              UNITED STATES DISTRICT JUDGE